# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LISSA MEL,<br><br>   Defendant. | Criminal Action No. TDC-18-0571 |

## MEMORANDUM OPINION

Pending before the Court is Defendant Lissa Mel's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Based on Extraordinary and Compelling Circumstances Arising from the COVID-19 Pandemic. ECF No. 118. After pleading guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, Mel was sentenced on August 23, 2019 to 12 months and one day of imprisonment. Mel was designated to the Federal Correctional Institution in Danbury, Connecticut ("FCI-Danbury"). Having served over one month in pretrial detention and having accrued good conduct credits at FCI-Danbury, Mel is scheduled to be released on May 22, 2020. In her Motion, Mel seeks a reduction of her sentence under a statutory provision commonly referred to as the "compassionate release" provision because of the COVID-19 outbreak and the significant health risk that exposure to the coronavirus would pose to her in light of an untreated health condition. The Government opposes the Motion on the grounds that (1) Mel has not exhausted administrative remedies, as required by the statute; and (2) Mel has not demonstrated the extraordinary and compelling reasons required to justify a sentencing reduction.

## DISCUSSION

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the

compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id.* § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to also allow prisoners to seek a sentencing reduction directly from the Court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1)   in any case that—
>
> > (A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i)   extraordinary and compelling reasons warrant such a reduction;
> >
> > \* \* \*
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.* Mel argues that the COVID-19 pandemic presents "extraordinary and compelling reasons" warranting a sentence reduction to time served.

## I.   Exhaustion of Administrative Remedies

On March 24, 2020, Mel sent to the Warden of FCI-Danbury an email request for compassionate release under this provision in light of the COVID-19 pandemic and also submitted the request through a standard inmate request form. The Government does not argue that Mel's March 24, 2020 email submission was not a valid request to the Warden for compassionate release. Under the statute, the exhaustion requirement is fulfilled "after . . . the lapse of 30 days from the

receipt of such request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). As the parties agreed during the April 27, 2020 status conference, where a 30-day period following the receipt of Mel's request ended on April 23, 2020, Mel has now satisfied the statutory exhaustion requirement.

## II.   Compassionate Release

Where Mel's scheduled release date is May 22, 2020, and she acknowledges that she will have to spend 14 days in quarantine at FCI-Danbury before she can be released, she is effectively requesting a reduction in her sentence of two weeks. Because of the lack of a reasonable home detention location in the United States for such a limited period of time, Mel's stated desire to return to her home country of Israel as soon as possible, and the complexities and uncertainties arising from the presence of a U.S. Immigration and Customs Enforcement detainer, the Court finds that a modification of the remaining period of incarceration to home detention is not feasible and instead will consider only whether a straight reduction of the original sentence by those two weeks, to a period of time served, is warranted.

As applied to Mel, the COVID-19 pandemic presents "extraordinary and compelling reasons" that warrant the modest sentencing reduction requested. As of April 26, 2020, the pandemic has resulted in 2,858,635 cases worldwide and 196,295 deaths. Coronavirus Disease (COVID-19) Pandemic, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019, last visited Apr. 27, 2020. In the United States, as of April 25, 2020, it has resulted in 928,619 cases and 52,459 deaths. Cases in U.S., Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html, last visited Apr. 27, 2020. In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within

prisons and detention facilities is particularly high. *See Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) (citing expert opinions); *see also, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047 (2007), https://academic.oup.com/cid/article/45/8/1047/344842 (detailing difficulties in preventing transmission of infectious diseases inside institutional facilities). Thus, even with the BOP mitigation measures outlined by the Government, as of April 26, 2020, COVID-19 is present among inmates or correctional staff at 62 different Bureau of Prisons facilities, consisting of 1,118 cases and resulting in 27 deaths. *See COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, last visited Apr. 27, 2020.

Although the presence of the historic COVID-19 pandemic in prisons arguably could alone establish extraordinary and compelling reasons, Mel has been incarcerated at FCI-Danbury, one of the hardest hit federal prisons. On April 3, 2020, Attorney General William P. Barr identified FCI-Danbury as one of the three prisons facing "significant levels of infection" and initiated efforts to move out inmates with the highest risk for COVID-19. Memorandum from William P. Barr, Attorney Gen. of the United States, to Dir. of Bureau of Prisons at 1 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. According to Mel, the Bureau of Prisons reported that as of April 12, 2020, 37 inmates and 30 correctional staff members had tested positive at FCI-Danbury. Emergency Mot. to Reduce Sentence at 20, ECF No. 118. The Government has not contested these figures. As of April 24, 2020, presumably after some inmates were released, there were still 37 cases among inmates and correctional staff. One FCI-Danbury inmate has died from COVID-19. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp, last visited Apr. 27, 2020. Thus, COVID-19 continues to present a significant threat to the health and safety of Mel and the other inmates at

FCI-Danbury, and further reductions in the population will serve to improve the ability to main distance among inmates and therefore would advance the safety of the remaining inmates.

Moreover, Mel has asserted that she has a health condition that places her at greater vulnerability to COVID-19.  She has submitted documents establishing that she has a thyroid mass that, in July 2019, a doctor concluded had a 25 to 40 percent chance of being malignant.  To date, Mel has been unable to have a follow-up examination of that mass.  Although FCI-Danbury arranged an examination of Mel at a hospital in Danbury scheduled to occur in March 2020, at a time when the COVID-19 outbreak was ongoing, she reasonably declined the appointment out of fear of contracting COVID-19 while at the hospital.  Where Mel has not received a cancer diagnosis, and she has not claimed to have any adverse health symptoms that might support the conclusion that she has such a serious illness, the Court cannot conclude with certainty that Mel has a high-risk health condition, particularly where she has not undergone any cancer treatment. *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, last visited Apr. 26, 2020 (identifying cancer treatment, not cancer itself, as a high-risk condition). Nevertheless, the Court finds that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19, and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life-threatening condition, collectively establish "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A).

The Court must also consider whether the factors set forth in 18 U.S.C. § 3553(a) support a reduction.  Although the Government correctly asserts that the nature and circumstances of the offense, an international fraud conspiracy causing countless individuals to lose their life savings,

were egregious, it is undisputed that Mel's role was very limited, arguably the most limited of all the convicted defendants. As for Mel's history and characteristics, she had no criminal history and presents absolutely no danger to others. As an Israeli national with virtually no ties to the United States, and a single mother of a young child in Israel, she has endured a prolonged separation from her child, including during a lengthy period of pretrial home detention in California at the residence of an acquaintance and thus has endured significant hardship beyond the sentence itself.

Although the original sentence appropriately balanced the purposes of sentencing, where Mel's requested reduction is limited to a two-week period, such a reduction will not diminish the seriousness of the offense or respect for the law, nor will it adversely affect deterrence or increase risk to the public. The fact that Mel has been incarcerated at FCI-Danbury during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated that the purposes of sentencing are fully met even with the two-week reduction. Indeed, the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing. Accordingly, the Court finds that the requested reduction is warranted upon consideration of the § 3553(a) factors.

Finally, the Court finds that the requested sentencing reduction is consistent with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although the relevant policy statement in the sentencing guidelines identifies certain specific scenarios under which a sentence reduction could be warranted, it nevertheless permits a reduction based only on meeting the broad category of "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(1)(A) & app. note 1(D). Since the First Step Act changes the law to allow a compassionate release reduction to be granted by the Court without input from the BOP, the pre-First Step Act references in the policy statement to determinations by the BOP are outdated and not binding. *See,*

*e.g.*, *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019).  Finally, the requirement that the defendant not be a danger to any individual or the community is plainly satisfied in this instance.  U.S.S.G. § 1B1.13(2).

Accordingly, the Court will grant the Motion and reduce Mel's sentence to time served, subject to the requirement that she remain in quarantine at FCI-Danbury for two weeks before she is released.  The Court finds that such a reduction is warranted under 18 U.S.C. § 3582(c)(1)(A) and is in the interests of justice.

## CONCLUSION

For the foregoing reasons, Mel's Emergency Motion to Reduce Sentence will be GRANTED.  A separate Order shall issue.

Date:   April 28, 2020                         /s/     *Theodore D. Chuang*
                                               THEODORE D. CHUANG
                                               United States District Judge